# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0849-20

IN THE MATTER OF THE
CIVIL COMMITMENT
OF T.L., SVP-774-17.

_____

Argued February 9, 2022 – Decided February 23, 2022

Before Judges Sumners and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. SVP-774-17.

Susan Remis Silver, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Susan Remis Silver, of counsel and on the briefs).

Stephen Slocum, Deputy Attorney General, argued the cause for respondent State of New Jersey (Andrew J. Bruck, Acting Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Stephen Slocum, on the brief).

PER CURIAM

T.L. appeals from an October 15, 2020 judgment continuing his commitment to the State of New Jersey Special Treatment Unit (STU), pursuant

to the Sexually Violent Predator Act (SVPA), N.J.S.A. 30:4-27.24 to -27.38. In July 2019, we affirmed the commitment judgment. See In re Civ. Commitment of T.L., No. A-5565-17 (App. Div. July 10, 2019). In this appeal, T.L. argues the trial court again committed him based on inadmissible hearsay evidence, which was improvidently admitted for its truth, to conclude T.L. committed two sex offenses, one in 2001 and the other in 1998. T.L. claims he has only one sex offense conviction emanating from a July 2001 incident, and the 1998 endangering the welfare of a child conviction was erroneously construed as a "prior sexual offense" by the trial court in reaching its conclusion to commit him. We reject these arguments and affirm.

I.

We need not recount at length T.L.'s past history of sexually violent conduct and aberrational sexual behavior. By reference, we incorporate the facts and procedural history set forth in our prior unpublished decision, which conclusively established that T.L. committed the predicate sexually violent offense required under the SVPA. See generally ibid. Briefly, T.L. pled guilty to first-degree aggravated sexual assault based on evidence that he sexually assaulted a thirteen-year-old disabled boy. T.L. admitted he "took advantage"

of the boy and also admitted to sexually assaulting other inebriated underaged males without their consent.

T.L. was incarcerated at the Adult Diagnostic Treatment Center (ADTC) following his conviction and was subject to community supervision for life (CSL), N.J.S.A. 2C:43-6.4, upon his release in 2008. He repeatedly violated the conditions of his CSL by possessing a computer and creating a Facebook account under a false name containing videos and pictures of minors. In addition, T.L. possessed a smartphone and a laptop depicting pictures of himself with minor children, including photos of T.L. observing a child's haircut and attending a trip to Six Flags theme park with minor children. On July 25, 2016, T.L. pled guilty to a CSL violation and testified at his plea allocution that he created the Facebook account knowing it was a CSL violation. He also violated the terms of his CSL by attending only sixty percent of his outpatient sex offender treatment sessions.

In January 2016, T.L. violated the terms of his CSL again by possessing ten bottles of wine and a bottle of vodka. He also violated his curfew by leaving his residence at 1:24 a.m., as recorded by a GPS monitoring bracelet, to rendezvous with an individual he met on a casual sexual encounters phone app. While police were searching T.L.'s home, a fifteen-year-old boy arrived at the

A-0849-20

residence stating he was there to "chill," and that he and T.L. routinely spent time alone at his home.

On August 17, 2016, T.L did not respond to his parole officer's knocks on the door to his residence for several minutes. Upon gaining entry, the parole officer discovered multiple cell phones, a pair of child's boxer shorts on the floor, other children's clothing, and marijuana. Police identified twelve-year-old and fourteen-year-old brothers who admitted to being alone with T.L. in his residence. T.L. led the boys out the back door and directed them to jump over the backyard fence when his parole officer arrived. The children admitted they were alone with T.L., which was confirmed by their father.

T.L.'s criminal history is significant for arrests and convictions for false swearing, hindering apprehension or prosecution, false reports to law enforcement, simple assault, multiple counts of theft by unlawful taking, receiving stolen property, harassment, theft of property, theft of services, possession of false identification, and numerous drug offenses. On September 8, 2017, the State filed a petition to civilly commit T.L. under the SVPA, which we affirmed. T.L., slip op. at 1.

At the review hearing conducted on August 27 and 28, 2020, which is the subject of this appeal, the State presented two expert witnesses, Dr. Roger

A-0849-20

Harris, a psychiatrist, and Dr. Justyna Dmowski, a forensic psychologist. T.L. testified on his own behalf. The State's experts' qualifications were accepted without objection. Since T.L. refused to undergo an evaluation at the State's request with Dr. Harris, the expert performed a forensic evaluation relying upon documents of record, including T.L.'s prior treatment records, and police reports. Dr. Harris prepared a report of his findings and opinions, relying on sources of information normally relied upon by experts in his field of expertise.

Both experts agreed that T.L. suffers from other specified paraphilic disorder, antisocial personality disorder, and multiple substance abuse disorders, which predisposed him to sexually reoffend. Dr. Harris highlighted that T.L. was on probation when he committed the sexually violent offense in 2001. Despite earlier criminal sanctions, T.L.'s lack of control over his sexually violent behavior emphasizes his compulsion to offend, even when supervised. Dr. Harris noted that T.L.'s admissions of arousal caused by thirteen- to seventeen-year-old boys, and his arousal to intercourse with incapacitated individuals who cannot resist, in conjunction with the records of his 1998 endangering the welfare of a child offense, indicate sexual motivation in the 1998 offense. Even if T.L.'s guilty plea excepted sexual elements, Dr. Harris explained it would not

5

alter the clinical relevance of the 1998 endangering the welfare of a child offense.

Using the Static-99R actuarial tool,[1] Dr. Harris scored T.L. a three. "His score . . . places him in a category of men who were at average risk to sexually reoffend when released from a prison." According to Dr. Harris, the Static-99 actuarial does not completely explain T.L.'s risk because it does not take into consideration physiological and dynamic factors or treatment progress. However, Dr. Harris stated T.L. "has more than one paraphilia, has antisocial attitudes and behaviors, has repeatedly failed supervision, uses sex for coping, [has] poor self[-]regulation, poor problem solving and lifestyle impulsivity."[2] In addition, Dr. Harris opined T.L. "has also used alcohol to render adolescents

---

[1] "The Static-99 is an actuarial test used to estimate the probability of sexually violent recidivism in adult males previously convicted of sexually violent offenses." In re Civ. Commitment of R.F., 217 N.J. 152, 164 n.9 (2014) (citing Andrew Harris, et al., Static-99 Coding Rules Revised – 2003 5 (2003)). Our Supreme Court "has explained that actuarial information, including the Static-99, is 'simply a factor to consider, weigh, or even reject, when engaging in the necessary factfinding under the SVPA.'" Ibid. (quoting In re Commitment of R.S., 173 N.J. 134, 137 (2002)).

[2] During his testimony, Dr. Harris explained the clinical impossibility in ascribing statistical quantifications to dynamic and psychological risk factors. Static-99R's statistical quantification does not represent T.L.'s individual risk to reoffend. Dr. Dmowski concurred with Dr. Harris.

A-0849-20

incapacitated," which is "an additional risk factor." T.L. has re-offended while actively undergoing sex offender treatment.

Dr. Dmowski evaluated T.L., reviewed his treatment progress, and rendered a report. In June 2020, Dr. Dmowski testified T.L. graduated from "Phase 2" of treatment—"the rapport-building phase[] before core sex offender treatment"—to "Phase 3A"—"for the first half of substantive, core sex offender treatment." According to Dr. Dmowski, T.L.'s treatment providers highlighted his failure to internalize treatment and apply same to his early life. Dr. Dmowski further explained T.L. applies cognitive distortions to reduce the significance of his actions and to justify creating victims. He does not comprehend his offense cycle and has yet to develop a relapse prevention plan as part of his treatment, leading Dr. Dmowski to conclude T.L. "is in the beginning of treatment." Additionally, Dr. Dmowski opined T.L. has poor relationship stability and deviant sexual arousals.

Both experts noted the same high prevalence of dynamic risk factors for T.L. and maintained he remains highly likely to reoffend. They agreed T.L.'s conditions do not spontaneously remit but require interventions to control and mitigate the associated risks, and he has shown minimal treatment progress.

A-0849-20

They agreed that, to date, T.L. has not been able to adequately reduce his risks through treatment, and he requires continued commitment.

During T.L.'s testimony, he denied committing the 1998 offense. He also denied his CSL violations from 2011 through 2017 or ever using illicit drugs. However, T.L. asserted he lied about using drugs, then admitted to selling drugs and violating his CSL by creating social media accounts.

On October 15, 2020, the trial court entered a judgment continuing T.L.'s commitment under the SVPA. In an oral opinion rendered over two days,[3] the trial court agreed with the opinions of the State's experts, finding their testimony "credible." The court found T.L.'s "volitional and emotional functioning . . . predisposes him to be unable to control his sexually violent behavior, and he will . . . reoffend." Based on the experts' proofs, the court determined T.L. is "unable to regulate and inhibit his sexual arousal to boys." The court found T.L. has been at the STU for three years "participating in treatment while struggling with his resentment for his commitment." Addressing T.L.'s sexual offense cycle, the court noted "[h]e has not mitigated his risk to sexually reoffend through treatment." The court concluded the State satisfied each prong of the

---

[3] The record reflects the trial court gave its oral opinion on October 14 and 15, 2020.

8

SVPA by clear and convincing evidence that T.L. requires continued commitment for control, care, and treatment. Accordingly, the trial court entered an order continuing T.L.'s commitment in the STU. This appeal followed.

On appeal, T.L. raises the following point for our consideration:

> THE TRIAL COURT IMPROPERLY RELIED ON HEARSAY FOR ITS TRUTH VALUE WHEN IT CONTINUED T.L.'S COMMITMENT.

## II.

We begin with a review of the governing principles. An order of continued commitment under the SVPA, like an initial order, must be based on "clear and convincing evidence that an individual who has been convicted of a sexually violent offense, suffers from a mental abnormality or personality disorder, and presently has serious difficulty controlling harmful sexually violent behavior such that it is highly likely the individual will reoffend" if not committed to the STU. In re Civ. Commitment of G.G.N., 372 N.J. Super. 42, 46-47 (App. Div. 2004) (citing In re Commitment of W.Z., 173 N.J. 109, 120, 132 (2002)); see also N.J.S.A. 30:4-27.32(a) (authorizing continued involuntary commitment of sexually violent predators). N.J.S.A. 30:4-27.26 defines a "[m]ental abnormality" as "a mental condition that affects a person's emotional,

cognitive or volitional capacity in a manner that predisposes that person to commit acts of sexual violence." The mental abnormality of personality disorder "must affect an individual's ability to control his or her sexually harmful conduct." W.Z., 173 N.J. at 127.

"'Likely to engage in acts of sexual violence' means the propensity of a person to commit acts of sexual violence is of such a degree as to pose a threat to the health and safety of others." N.J.S.A. 30:4-27.26. At the SVPA commitment hearing, "the State must prove that threat by demonstrating that the individual has serious difficulty in controlling sexually harmful behavior such that it is highly likely that he or she will not control his or her sexually violent behavior and will reoffend." W.Z., 173 N.J. at 132.

Like the initial order of commitment, in order to continue to commit the individual, the court must assess the offender's "present serious difficulty with control over dangerous sexual behavior." Id. at 132-33 (emphasis added); see also In re Civ. Commitment of J.H.M., 367 N.J. Super. 599, 610-11 (App. Div. 2003) ("[T]he confinement's duration is . . . linked to the stated purposes of the commitment, namely to hold the person until his [or her] mental abnormality no longer causes him [or her] to be a threat to others." (quoting Kansas v. Hendricks, 521 U.S. 346, 363 (1997))).

10

On the other hand, "an individual should be released when a court is convinced that he or she will not have serious difficulty controlling sexually violent behavior and will be highly likely to comply with [a] plan for safe reintegration into the community." W.Z., 173 N.J. at 130. To that end, N.J.S.A. 30:4-27.32(c)(1) allows a court to "find a committee 'not likely' to engage in acts of sexual violence, and authorizes conditional release of such a person upon a finding that 'the person is amenable to and highly likely to comply with a plan to facilitate the person's adjustment and reintegration into the community.'" Ibid. (emphasis added) (quoting N.J.S.A. 30:4-27.32(c)(1)).

Our scope of review of a judgment for commitment under the SVPA "is extremely narrow." R.F., 217 N.J. at 174 (quoting In re D.C., 146 N.J. 31, 58 (1996)). We must "give deference to the findings of our trial judges because they have the 'opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" Ibid. (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). Moreover, "[t]he judges who hear SVPA cases generally are 'specialists' and 'their expertise in the subject' is entitled to 'special deference.'" Ibid. (quoting In re Civ. Commitment of T.J.N., 390 N.J. Super. 218, 226 (App. Div. 2007)).

Accordingly, a SVPA judge's determination either to commit or release an individual is accorded substantial deference and should not be modified by an appellate court "unless the record reveals a clear mistake." Id. at 175 (internal quotation marks omitted) (quoting D.C., 146 N.J. a 58). Thus, "[s]o long as the trial court's findings are supported by 'sufficient credible evidence present in the record,' those findings should not be disturbed." Ibid. (quoting Johnson, 42 N.J. at 162); see also In re Civ. Commitment of J.M.B., 197 N.J. 563, 597 (2009).

As an initial matter, the State argues the law of the case doctrine bars T.L.'s hearsay arguments on appeal because this court already decided the identical argument in his previous appeal. The law of the case doctrine sometimes requires an equal or lower court to respect a court's decision of law made in a particular case during the pendency of that case. See State v. K.P.S., 221 N.J. 266, 275 (2015) (citing State v. Reldan, 100 N.J. 187, 203 (1985)); see also Arizona v. California, 460 U.S. 605, 618 (1983) ("[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." (emphasis added)).

However, this principle is not applicable to SVPA matters. "A person who has been committed under the SVPA is entitled to 'an annual court review hearing of the need for involuntary commitment as a sexually violent predator.'"

In re Civ. Commitment of W.W., 245 N.J. 438, 451 (2021) (quoting N.J.S.A. 30:4-27.35). Although T.L. essentially reiterates the same arguments here as he previously did, the purpose of an SVPA review hearing is to evaluate a "committee's current condition." State v. Fields, 77 N.J. 282, 310 (1978) (emphasis added). And, T.L. correctly points out, "[t]his appeal stems from a different final order by a different trial court judge and is not a continuation of his prior appeal." All prior evidence remains relevant, but "[t]he reviewing judge must evaluate the current evidence submitted to him [or her] in light of all evidence adduced in earlier proceedings." Ibid.

Furthermore, we are not required to bar T.L.'s argument because of our earlier decision. "The law of the case doctrine 'is a "non-binding rule[,]' . . . . subject to the exercise of sound discretion." K.P.S., 221 N.J. at 276-77 (quoting Lombardi v. Masso, 207 N.J. 517, 538 (2011)), "subject to the exercise of sound discretion," id. at 277. Thus, even if the doctrine applies, it does not automatically bar T.L.'s appeal on the issue. Nonetheless, although T.L. may argue the same issue, that does not mean he is entitled to a different result.

T.L. contends we must "reverse the trial court's [c]ommitment [o]rder . . . because it was based on unproven and inadmissible hearsay about

13

[his] mental condition and risk." The SVPA requires the State to prove three elements at a civil commitment hearing:

> (1) that the individual has been convicted of a sexually violent offense; (2) that he suffers from a mental abnormality or personality disorder; and (3) that as a result of his psychiatric abnormality or disorder, it is highly likely that the individual will not control his or her sexually violent behavior and will reoffend.
>
> [In re Civ. Commitment of P.D., 243 N.J. 553, 566 (2020) (internal quotation marks omitted) (quoting R.F., 217 N.J. at 173).]

"Sexually violent offense" under the SVPA includes:

> (a) aggravated sexual assault; sexual assault; aggravated criminal sexual contact; kidnapping pursuant to [N.J.S.A. 2C:13-1(c)(2)(b)]; criminal sexual contact; felony murder pursuant to [N.J.S.A. 2C:11-3(a)(3)] if the underlying crime is sexual assault; an attempt to commit any of these enumerated offenses; or a criminal offense with substantially the same elements as any offense enumerated above, entered or imposed under the laws of the United States, this State or another state; or
>
> (b) any offense for which the court makes a specific finding on the record that, based on the circumstances of the case, the person's offense should be considered a sexually violent offense.
>
> [N.J.S.A. 30:4-27.26.]

"If the court finds by clear and convincing evidence that the person needs continued involuntary commitment as a sexually violent predator, it shall issue

an order authorizing the involuntary commitment . . . ." W.W., 245 N.J. at 451 (second alteration in original) (quoting N.J.S.A. 30:4-27.32(a)).  "Given the statutory definition of a 'sexually violent predator,' expert witnesses in the fields of psychiatry and psychology routinely play leading roles in SVPA commitment hearings." Ibid. (quoting In re Civ. Commitment of D.Y., 218 N.J. 359, 382 (2014)).  Thus, the SVPA requires the State present an expert psychiatrist's testimony based on his or her personal examination of the potential committee at the hearing. W.W., 245 N.J. at 451 (citing N.J.S.A. 30:4-27.30(b) ("A psychiatrist . . . who has conducted a personal examination of the person . . . shall testify at the hearing to the clinical basis for the need for involuntary commitment as a sexually violent predator.")).

We review evidentiary decisions under "the abuse of discretion standard because, from its genesis, the decision to admit or exclude evidence is one firmly entrusted to the trial court's discretion." Rodriguez v. Wal-Mart Stores, Inc., 237 N.J. 36, 57 (2019) (quoting Est. of Hanges v. Metro Prop. & Cas. Ins. Co., 202 N.J. 369, 383-84 (2010)).  Hearsay[4] is generally inadmissible evidence.  N.J.R.E. 802.  However, the facts or data upon which an expert bases an opinion on need not be

---

[4] Hearsay is a statement an out-of-court statement offered "in evidence to prove the truth of the matter asserted in the statement."  N.J.R.E. 801(c).

A-0849-20

admissible in evidence "[i]f of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." N.J.R.E. 703. Therefore, this court has "previously held that hearsay typically relied upon by expert witnesses to assist in reaching a diagnosis is admissible under [Rule] 703." In re Civ. Commitment of J.S.W., 371 N.J. Super. 217, 225 (App. Div. 2004). This court has "held further that a trial judge may use hearsay reports 'as background in evaluating the opinions of the . . . experts, who testified that they considered these reports in reaching their own diagnoses.'" Ibid. (alteration in original) (quoting In re Civ. Commitment of A.X.D., 370 N.J. Super. 198, 202 (App. Div. 2004)) (affirming the commitment court's reliance on hearsay—presentence reports and ADTC evaluations—contained in expert testimony and exhibits to reach its decision).

Our Court echoed this approval in holding the "use of police reports, presentence reports and prior psychiatric evaluations . . . 'to evaluate the opinions of the testifying experts who considered these documents in reaching their diagnoses.'" 197 N.J. at 597 n.9; accord In re Civ. Commitment of W.X.C., 407 N.J. Super. 619, 641-42 (App. Div. 2009) (holding the trial court correctly considered the experts' reliance on the appellant's mental health records, criminal history, clinical test results, and police reports). In affirming "the trial court's reliance on the experts' opinions, which were based on a broad array of evidence about" J.M.B., the Court

"specifically endorse[d] [our] holding that the mental health experts could use presentence reports because 'they are the type of evidence reasonably relied on by psychiatrists in formulating an opinion as to an individual's mental condition.'" J.M.B., 197 N.J. at 597 n.9 (quoting In re Civ. Commitment of J.M.B, 395 N.J. Super. 69, 93 (App. Div. 2007)).

Additionally, "[i]t is beyond question that medical experts rely upon the opinions of prior treating physicians." In re Civ. Commitment of E.S.T., 371 N.J. Super. 562, 572 (App. Div. 2004). "[T]he reports themselves [may be] admissible for their truth under applicable exceptions to the hearsay rule[,]" A.X.D., 370 N.J. Super. at 202, such as the business records exception, [Rule] 803(c)(6), or the party-opponent's statement exception, [Rule] 803(b)(1), if the reports include defendant's statements made to the treatment team or others, A.X.D., 370 N.J. Super. at 202. A testifying expert must rely upon such information "to obtain a history of what happened through the years, to see how the people involved in the offenses viewed the offenses, and to get a sense of the way [others have] responded to these situations over time." J.H.M., 367 N.J. Super. at 613.

Experts may consider this information, including the opinions of non-testifying experts, if they formulate their own opinions and do not simply "parrot" that of the experts who did not testify. See In re Civ. Commitment of A.E.F., 377

N.J. Super. 473, 491-92 (App. Div. 2005). In other words, opinions based on hearsay evidence are indeed admissible insofar as they are used to inform the expert's opinion. A.X.D., 370 N.J. Super. at 201-02 (holding experts are allowed to rely on STU reports at a SVPA commitment hearing if they ordinarily relied on such information to assist them in reaching a diagnosis).

T.L. maintains that while his 2001 conviction may meet the first prong of the SVPA commitment test, the trial court did not require the State to present clear and convincing evidence to satisfy prongs two and three. In addition, T.L. contends the State cannot prove, based on hearsay evidence, that he suffers from a mental abnormality or personality disorder, or "it is highly [un]likely that the individual will not control his or her sexually violent behavior and will reoffend" due to such a disorder. R.F., 217 N.J. at 173. We reject T.L.'s arguments. Here, both experts testified and affirmed the sources they reviewed are the type customarily relied upon by experts in their fields of expertise. Saliently, Dr. Harris and Dr. Dmowski confirmed further that they formulated their own conclusions and did not simply "parrot" T.L.'s doctors' opinions and diagnoses. See A.E.F., 377 N.J. at 491-92.

T.L. also argues: (1) the trial court erroneously found his 1998 endangerment conviction and CSL violations were sexual in nature based upon hearsay, thus demonstrating he suffers from a requisite mental abnormality and personality

disorder under prong two; and (2) both experts improperly relied on the same inadmissible hearsay evidence, which assumed he committed multiple sexual offenses and CSL violations "to conclude that he was at high risk to sexually reoffend." T.L. asserts the experts' diagnoses and risk assessment of him relied on assuming the truth of hearsay information that he committed multiple sexual offenses against teenage boys when the evidence showed only one sexual offense was committed.

T.L. concedes he meets the first prong of the statute because of his sexually violent offense conviction from 2001. But the hearsay statements and information were not presented for their truth of the matters asserted but rather to serve as part of the bases of the experts' opinions. N.J.R.E. 703; see E.S.T., 371 N.J. Super. at 571. We agree with the trial court that [c]ase law and [the] Rules of Evidence allow experts to consider the [c]ourt and [p]olice records in forming their opinion[,] helping to formulate their opinion. And the [c]ourt may review these records . . . for the purposes of evaluating the expert's opinions." The trial court found the experts' opinions were supported by details in the information sources they utilized:

> Both State's experts relied on prior evaluations, treatment records, other appropriate documentation and actuarial instruments that supported their conclusions. They were not net opinions. Their testimony confirmed their opinions were based on comprehensive review of

> data and information of the type relied upon by others
> in their scientific community . . . .

The trial court was correct in its analysis. Notwithstanding T.L.'s 2001 aggravated sexual assault conviction, the details of the 1998 offense, as described by the experts, does not change the outcome under the second prong. As Dr. Harris testified, his diagnoses of T.L. would remain unchanged even if T.L.'s 1998 guilty plea for endangerment excluded "sexual elements" because that would not change the offense's clinical relevance. Therefore, T. L.'s hearsay arguments regarding his diagnoses are unavailing because he falls under the purview of the SVPA.

We also reject T.L.'s argument as to prong three that the trial court relied on "unproven hearsay" to find him "highly likely to reoffend and in need of commitment" in the following instances: (1) giving alcohol and having sexual contact with the thirteen-year-old disabled boy; (2) incapacitating another child with alcohol and drugs; (3) violating his CSL by giving drugs and alcohol to minors; (4) recruiting minors for sexual contact; and (5) having unsupervised contact with minors since his 2001 sex offense.

Applying our limited standard of review, we affirm the trial court's order continuing T.L.'s commitment. The court's conclusions are amply supported by the evidence presented at the review hearing, and consistent with the law governing SVPA proceedings. From our careful review of the record, we are

A-0849-20

satisfied that the court appropriately determined that T.L.'s failure to meaningfully engage in treatment to reduce the risks associated with his conditions was sabotaging the potential for his release.

For the reasons discussed, T.L.'s continuing commitment is entirely appropriate. Moreover, any arguments we did not specifically address lack sufficient merit to warrant discussion in a written opinion. See R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

21

A-0849-20